United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANCY DIANE ALVA,<br>    Plaintiff,<br>    v.<br>NANCY A BERRYHILL,<br>    Defendant. | Case No. 18-cv-04502-KAW<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 20, 22 |

Plaintiff Nancy Diane Alva seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for payment of benefits, or, in the alternative, for further proceedings.

Pending before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. Having considered the papers filed by the parties, and for the reasons set forth below, the Court DENIES Plaintiff's motion for summary judgment, and GRANTS Defendant's cross-motion for summary judgment.

## I. BACKGROUND

Plaintiff filed for Title II benefits on June 23, 2014. (Administrative Record ("AR") 219.) Plaintiff asserted disability beginning November 1, 2011, based on Temporomandibular Joint Syndrome, neck and back pain, and perforated disks in the upper spine. (AR 219, 233.) The Social Security Administration ("SSA") denied Plaintiff's application initially and on reconsideration. (AR 129, 135.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"); the hearing was held on June 24, 2016. (AR 145-46, AR 34.)

Following the hearing, the ALJ denied Plaintiff's application on June 13, 2017. (AR 15-27.) A request for review of the ALJ's decision was filed with the Appeals Council on July 6,

1    2017. (AR 218.) The Appeals Council denied Plaintiff's request for review on May 23, 2018.

2    (AR 1.) On July 25, 2018, Plaintiff commenced this action for judicial review pursuant to 42

3    U.S.C. § 405(g). (Compl., Dkt. No. 1.)

Plaintiff filed her motion for summary judgment on February 13, 2019. (Pl.'s Mot., Dkt. No. 20.) Defendant filed an opposition and cross-motion for summary judgment on March 12, 2019. (Def.'s Opp'n, Dkt. No. 22.) Plaintiff filed her reply on March 26, 2020. (Pl.'s Reply, Dkt. No. 24.)

## II. LEGAL STANDARD

A court may reverse the Commissioner's denial of disability benefits only when the Commissioner's findings are 1) based on legal error or 2) are not supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla but less than a preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Under Social Security Administration ("SSA") regulations, disability claims are evaluated according to a five-step sequential evaluation. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). At step one, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at 721. If the answer is no, the claimant is not disabled. *Id.* If the answer is yes, the Commissioner proceeds to step three, and determines whether the impairment meets or equals a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If this requirement is

met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.

If a claimant does not have a condition which meets or equals a listed impairment, the fourth step in the sequential evaluation process is to determine the claimant's residual functional capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis, despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can perform such work, he is not disabled. 20 C.F.R. § 404.1520(f). RFC is the application of a legal standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a). If the claimant meets the burden of establishing an inability to perform prior work, the Commissioner must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the burden of proof at steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001). The burden shifts to the Commissioner at step five. *Id.* at 954.

## III. DISCUSSION

Plaintiff challenges the ALJ's decision on three grounds: (1) the ALJ did not articulate reasons for rejecting the opinion of Plaintiff's treating physician as to mental limitations specifically, (2) the ALJ improperly rejected the opinion of the examining doctor, and (3) the ALJ did not propound a complete hypothetical question to the vocational expert.

### A. Dr. Gruber

The court "distinguish[es] among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Id.* (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). "At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing reasons.'" *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). If a treating physician's medical opinion is contradicted by another doctor, the ALJ must identify specific legitimate reasons supported by substantial evidence to give more weight to the

3

non-treating doctor's opinion. *Id.*

Allen G. Gruber, M.D., is Plaintiff's treating physician, and began treating Plaintiff in September 2013. (AR 645.) On March 7, 2016, Dr. Gruber filled out a Cervical Spine Residual Functional Capacity Questionnaire, in which Dr. Gruber diagnosed myofascial pain, degenerative disc disease of the cervical and lumbar spine, chronic neck and back pain, TMJ, osteoarthritis, and occipital neuralgia. (AR 835.) Dr. Gruber opined that psychological conditions of depression, anxiety, and possible personality disorder contributed to the severity of Plaintiff's symptoms and functional limits. (AR 837.) Dr. Gruber further opined that Plaintiff's pain and other symptoms were severe enough to interfere with the attention and concentration needed to perform even simple work tasks on a constant basis. (AR 837.) He also found that Plaintiff was incapable of even low stress jobs because Plaintiff had very poor stress tolerance, and stress would trigger anxiety and pain. (AR 837.)

On June 8, 2016, Dr. Gruber filled out a Chronic Pain Residual Functional Capacity Questionnaire, in which Dr. Gruber diagnosed a degenerative cervical spine, cervical and neck pain, headaches, occipital neuralgia, and back pain. (AR 991.) Dr. Gruber also identified associated psychological problems and limitations of impaired attention and concentration, impaired short term memory, reduced ability to attend to tasks reduced ability to persist in tasks, depression, and anxiety. (AR 992.) Dr. Gruber opined that Plaintiff's experience of pain or other symptoms would interfere with the attention and concentration needed to perform even simple work tasks on a frequent basis. (AR 994.) In contrast to the March 7 Questionnaire, Dr. Gruber found that Plaintiff was capable of low stress jobs. (AR 994.)

The ALJ first reviewed Dr. Gruber's March 2016 opinion, listing Dr. Gruber's diagnoses and assessed limitations, including those on the ability to concentrate. (AR 24.) The ALJ then gave "partial weight to this opinion, because this opinion is contradicted by the opinions of the medical expert and consultative examiner and the longitudinal examinations." (AR 24.) The ALJ next reviewed Dr. Gruber's June 2016 opinion, again identifying both physical and mental limitations, including the associated psychological problems of impaired attention and concentration, impaired short-term memory, reduced ability to attend to tasks, reduced ability to

4

persist in tasks, depression, and anxiety. (AR 24.) The ALJ again "afforded partial weight to this opinion, for the same reasons as to the prior opinions. In addition, these two opinions were written close in time but are not consistent." (AR 25.)

Plaintiff argues that the ALJ erred because the ALJ did not address the mental limitations separately. (Pl.'s Mot. at 8.) Instead, "the ALJ's evaluation of Dr. Gruber's opinions belong in a section where the ALJ was, almost entirely, assessing [Plaintiff]'s physical limitations. The ALJ's summary of the objective and clinical evidence in this section relates to physical impairments." (*Id.*) Plaintiff contends that "[t]he ALJ's analysis of [Plaintiff's] mental impairments belong in another section of the decision, which relates to identifying what impairments are severe and non-severe." (*Id.*) Thus, Plaintiff argues that "[t]he ALJ failed to articulate specific and legitimate reasons for rejecting Dr. Gruber's opinions regarding [Plaintiff]'s mental limitations."

The Court finds no error. While the ALJ's discussion of Dr. Gruber's opinion was in a section focused on physical limitations, the discussion itself was not limited to the physical impairments only. Instead, the ALJ described *all* of Plaintiff's limitations, including those related to attention and concentration, ability to persist, memory, and ability to perform low stress jobs. (*See* AR 24-25.) There is no suggestion that the ALJ gave Dr. Gruber's partial weight as to the physical limitations only, and the ALJ's rationale applies to the mental limitations as well. For example, with respect to mental limitations, the agency doctors found that Plaintiff's alleged affective and anxiety disorders were non-severe, with only mild restrictions on maintaining concentration, persistence, or pace. (AR 102, 121.) The longitudinal examinations also did not indicate any abnormalities; in the ALJ's previous description of Plaintiff's mental health record, the ALJ noted that there was no record of ongoing counseling or treatment, and Plaintiff's November 2014 mental status exam was "relatively normal." (AR 18-19.) Further, there were inconsistencies between Dr. Gruber's March and June 2016 opinions specific to Plaintiff's alleged mental impairments, including a diagnosis of possible personality disorder in March 2016 but not in June 2016, as well as a finding that Plaintiff could not perform low-stress jobs in March 2016 but could perform low-stress jobs in June 2016. (AR 837, 992, 994.)

Notably, Plaintiff does not challenge the ALJ's reasoning in giving partial weight to Dr.

Gruber's opinion. Instead, Plaintiff challenges the ALJ's alleged failure to provide reasons specific to the mental impairments. The Court, however, finds that the ALJ has provided specific legitimate reasons supported by substantial evidence. *Compare with Sandoval v. Astrue*, Case No. EDCV 08-1588-OP, 2009 U.S Dist. LEXIS 102000, at *11-14 (C.D. Cal. Oct. 30, 2009) (finding no error where the ALJ rejected a doctor's opinion as to both physical and mental limitations where the ALJ only explicitly provided specific and legitimate reasons for rejecting the physical limitations).

### B. Dr. Yee

Bonnie Yee, Psy.D., is an examining doctor. (AR 19.) Dr. Yee conducted a psychological consultative exam on November 7, 2014. (AR 806.) During the exam, Plaintiff's chief complaints were depression and anxiety. (AR 806.) Plaintiff reported being able to complete most activities of daily living, including washing dishes, grocery shopping, and doing laundry. (AR 807.) Plaintiff was emotional and appeared to cry, but had no tears and would be in a different mood within seconds. (AR 807-08.) Dr. Yee commented that Plaintiff's "behavior appeared to attempt to portray herself as emotionally impaired, but it lacked credibility." (AR 808.) Dr. Yee further found that Plaintiff "presents with some vague depressive and anxious symptoms," but that "the symptoms . . . did not appear to be consistent with a diagnosis for depression or anxiety. However, it does appear that the claimant is somewhat anxious and somewhat depressed." (AR 809.) Dr. Yee opined that Plaintiff would have no difficulty performing simple and repetitive tasks, minor difficulty performing complex and detailed tasks, and no difficulty working with the public or supervisors and co-workers. (AR 809.) Dr. Yee also opined that Plaintiff would have difficulty maintaining attention and concentration, and moderate difficulty handling the stress of employment at the current time. (AR 809.) The ALJ ultimately gave Dr. Yee's opinion "little weight . . . because the longitudinal evidence does not support severe mental impairments." (AR 20.)

Plaintiff argues that the ALJ failed to articulate specific and legitimate reasons based on substantial evidence in the record. Again, the Court disagrees. The ALJ previously did discuss the medical evidence related to mental impairments, as well as his interpretations of those

6

findings. *Contrast with Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."). Specifically, the ALJ found that Plaintiff had only mild limitations in concentrating, persisting, and pace, noting that Plaintiff had reported that she could handle stress and changes in routine. (AR 19.) The ALJ also pointed to Dr. Yee's examination, where Plaintiff was "able to perform simple mathematical problems and do serial 3s." (AR 19.) While Plaintiff was not able to "correctly subtract 7 serially from 100," the ALJ noted that Plaintiff "did not attempt the task." (AR 19.) The ALJ could conclude from such findings that Plaintiff had only mild limitations, and Plaintiff does not argue otherwise. (*See* Pl.'s Mot. at 12.)

The ALJ also cited to Dr. Yee's consultative examination in finding that Plaintiff had only mild limitations in other functional areas. For example, with respect to understanding, remembering, or applying information, the ALJ explained that during the psychological consultative examination, Plaintiff's immediate and remote memory were within normal limits and her fund of knowledge was intact. (AR 18-19.) Plaintiff was also able to provide most of her background without any observed limitation and demonstrated adequate insight and judgment. (AR 19.) Likewise, the ALJ pointed to Dr. Yee's findings in concluding that Plaintiff had mild limitations in the ability to adapt or manage herself. (AR 19.) Taken together, the ALJ did not simply conclude that Dr. Yee's medical opinions were not supported by the longitudinal evidence, but discussed that evidence and explained why it showed only mild limitations.

Accordingly, the Court finds that the ALJ provided specific and legitimate reasons supported by substantial evidence for giving little weight to Dr. Yee's opinion.

### C. Hypothetical to the Vocational Expert

Finally, Plaintiff argues that the ALJ failed to propound a complete hypothetical to the vocational expert because the ALJ did not include any limitations in Plaintiff's ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; or adapt or manage herself. (Pl.'s Mot. at 12-13.) Plaintiff contends this is error because the ALJ had found mild limitations in these areas when concluding that Plaintiff's medically

7

determinable mental impairments were non-severe. (*Id.*; *see* AR 18-19.)

In support, Plaintiff relies on *Hutton v. Astrue*, 491 Fed. Appx. 850 (9th Cir. 2012). (Pl.'s Mot. at 13-14.) There, the ALJ found that the plaintiff's post-traumatic stress disorder ("PTSD") was non-severe, and caused no limitations with respect to daily activities or social functioning and only mild limitations in the area of concentration, persistence, or pace. *Hutton*, 491 Fed. Appx. At 850. The Ninth Circuit, however, found that the ALJ erred in determining the plaintiff's RFC because the ALJ did not consider the plaintiff's PTSD at all, despite having found that it caused mild limitations in the plaintiff's ability to concentrate, persist, or pace. *Id.* at 850-51. In doing so, the Ninth Circuit explained that the ALJ essentially "disregarded his own finding that [the plaintiff]'s nonsevere PTSD caused some 'mild' limitations in the areas of concentration, persistence, or pace." *Id.* at 851.

District courts in this circuit, however, "have generally declined to find reversible error when an ALJ found the claimant's mental impairments to be non-severe at step two and considered related, additional evidence of the claimant's mental impairments at step four." *Denney v. Saul*, No. 1:18-cv-689-GSA, 2019 U.S. Dist. LEXIS 147760, at *22 (E.D. Cal. Aug. 28, 2019) (listing cases); *see also George A. v. Berryhill*, Case No. 5:18-cv-405-AFM, 2019 U.S. Dist. LEXIS 71138, at *10 (C.D. Cal. Apr. 24, 2019) ("Other courts have found *Hutton* to be inapplicable where the record demonstrates that the ALJ considered a claimant's non-severe mental impairments before concluding that they did not cause any significant limitation necessitating inclusion in the RFC."). Such is the case here. The ALJ did not ignore Plaintiff's mental limitations at step four, but discussed it further, including explaining that Plaintiff "engaged in a somewhat normal level and range of daily activity and interactions[, and that s]ome of the physical and mental abilities and social interactions required to perform these activities are the same as those necessary for obtaining and maintaining employment." (AR 23.) The ALJ also noted that the activities of daily living reported to Dr. Yee exceeded that stated by Plaintiff and her husband. (AR 23.) The ALJ then reviewed the Third Party Function Report completed by Plaintiff's husband, which stated that Plaintiff did not finish tasks, before rejecting it as unsupported. (AR 25.) Further, the ALJ reviewed Dr. Gruber's opinions at step four, including

8

the alleged mental limitations. (AR 24-25.) Thus, this was not a case where the ALJ simply ignored prior findings of mild limitations made at step two; the ALJ instead discussed those limitations at step four in determining the appropriate RFC. The ALJ did not err. *See Sisco v. Colvin*, Case No. 13-cv-1817-LHK, 2014 U.S. Dist. LEXIS 84614, at *23 (N.D. Cal. June 20, 2014) (finding *Hutton* inapposite because "the ALJ specifically addressed [the plaintiff]'s mental condition at step four of his disability, by evaluating all of the evidence regarding [the plaintiff]'s mental condition . . . .").

## IV. CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's cross-motion for summary judgment.

IT IS SO ORDERED.

Dated: March 23, 2020

KANDIS A. WESTMORE
United States Magistrate Judge

9